The next matter on our calendar is Richard Cohen v. BMW Investments. Thank you. Counsel, you may take the podium. May it please the Court, my name is Jay Itkowitz, and I'm here with my associate Alan Cohen, and we represent the appellant Richard Cohen. We're here because this is a somewhat unusual case in that we have a situation where money that was clearly belonging to my client was stolen by an attorney and transferred to another party, who, while that party did not know that the money that was being given to him was stolen, was on notice. Wow. They were on notice by the circumstances. BMW had a contract with Teplin and with Exucia. That contract specifically provided, narrowly provided, that BMW was going to give $300,000 to Teplin to hold in his escrow account. And after a period of weeks, if BMW decided not to proceed with the investment, all they had to do was send a letter saying, we're not going forward with this deal, send us the $300,000. That's exactly what they did. In January of 2011, they requested the return of the money. The money was not forthcoming, nor was there any explanation. Unlike other kinds of escrow disputes, usually if an attorney is holding an escrow account and there's a demand for the payment of the escrow, if the attorney has a legal basis for withholding the escrow, or his client does, they state so. How does this show that they knew the money belonged to your client? Isn't that the key in the chain that's missing? I think the way they knew is by circumstantial evidence. Circumstantial evidence was that Mr. Teplin gave no explanation for not returning the money. No explanation to whom for not returning which money? Mr. Teplin gave no explanation to BMW and to BMW's attorney as to why he was not returning the money. Well, he's not returning their money. Correct. And then eventually he does return money. He returns money, and we get to the language of the district court in which the district court says that BMW's money was returned. But that's incorrect. BMW's money was never returned. The money is fungible. It doesn't have to be money from – I mean, apparently, Mr. Tepler… Teplin. Teplin stole or frittered away or otherwise misappropriated the money that belonged to BMW that should have been kept in escrow. Correct. Then he pays them back with money that happens to be derived from one of his other thefts. But why does BMW have any reason to think that that is anything other than Teplin giving BMW restitution for what they lost? I think the timing of the payments indicates it. So if we go to – if I may, just locate for a second the correspondence from BMW's counsel. This is found on A100. Mr. Newton, who was BMW's counsel, demands that BMW money be immediately returned or that BMW Investments will proceed to file grievances with the New York State Bar and issue a letter to Exusia's auditors. Now, then we go to the next document, which is on A104, which is the next day. Mr. Newton not only demands that the money be returned, but he demands that Mr. Teplin state, quote, every day beginning Thursday, November 18, 2010 through and including January 25, 2011, $300,000 was being held in the trust account of Teplin & Associates for the benefit of BMW and no part of the $300,000 had deployed for any purpose, even if returned at some later point. So how does that show that BMW even knew that your client existed, let alone that the money came from a fraud against your client? If Teplin squandered the money spent for his own purposes, misappropriated the money in the escrow account, and then he paid them back with money from his own assets, there would be no problem. No, there would be a problem. There would be a problem. Yes, yes. Why would there be a problem? Because it would be a violation. Sure, it would be a violation. Fine, it's a violation. Teplin is a bad guy. He's in prison. Great. But that doesn't mean that BMW is not entitled to be repaid $300,000. And if Teplin had an inheritance or some money he'd earned and he paid back— That would be no problem, Your Honor. I agree with you. But here the problem was, the nub of the problem is that the money that was repaid was clearly stolen money— Wait, wait, wait. Why do you—that's the question. We know now that it's stolen money, that it was stolen from your client. It came from the proceeds of one of his other schemes and frauds. The question is, what makes that clear to BMW? How do they know? Why are they on any kind of notice that they're not being repaid appropriately by Teplin? Because there was never—because they got a release from Mr. Teplin, and they never followed through on their requirement that Mr. Teplin assure them that the money had not been taken. And here's the problem. Why do they care, ultimately? Because the New York Code of Rules and Regulations requires an attorney, once he's on notice— It's fine. File a bar grievance against the attorney for not reporting Teplin. The question remains, what is it that indicates in any way, shape, or form, that BMW was aware that this money came from any fraudulent source at all, let alone from your client? We stated in our complaint that BMW was on notice that this money would be coming from another transaction. We stated that upon information and belief. And we believe that if we were given the opportunity for discovery, we could establish that Mr. Teplin said to BMW that money was coming soon and was coming from another transaction. Suppose it was coming from another transaction. Suppose he just sold the Empire State Building to somebody and got money. So if it was coming from another transaction, he clearly had invaded an escrow, committed a crime, and had— But they're the victim of the crime. BMW is the victim of the crime. What is there that says that BMW was aware that the proceeds from which they were being repaid was from some independent, wrongful act by Teplin against your client or against anybody else? I don't think it matters if it's an independent, wrongful act. If they know that their escrow has been taken and then it's replaced, that's a violation. And when you're comparing two parties, the case law that we've cited in our brief, the escrow cases, the trust cases, say that if you can trace escrow money from one to an—even to an innocent third party, which I will admit that BMW didn't do anything wrong other than fail to report Mr. Teplin. Had they reported Mr. Teplin, okay, it's possible, very possible, that Mr. Teplin would have been arrested before he had the opportunity to steal this money from Mr. Cohn. And so when you're balancing two innocent parties and you're looking at, well, here we know, clearly this money was stolen from Mr. Cohn, clearly this traceable asset that— it's not fungible because it's laid out in the bank records that that $300,000 of Mr. Cohn went directly to BMW. I would say this case would be in a different situation if that money came from an escrow account which had other people's money, then we wouldn't necessarily know that it was Mr. Cohn's money. But we know it was Mr. Cohn's money. It's beyond argument in this case. Counsel, your time has expired, but you've reserved three minutes for rebuttal. Yes, I do, Your Honor. Thank you. We'll hear from BMW. May it please the Court, good morning. My name is Jason Gerstein. I'm from DLA Piper, and I'm here for the appellee BMW Investments. I'll respond briefly to the point on, I think, the equity and good conscience point, which is what counsel was discussing, which is a required element of both of these claims. And I think the Court's questions covered many of the points that I was going to get through, but I want to take this back to Judge Coates' decision, and she held that on the face of the pleading, principles of equity and good conscience do not favor disgorgement. She got it exactly right, and nothing that was raised in the motion papers and nothing that was raised in the appeal papers, which are a substantial departure from the motion papers, changes that result. Judge Coates recognized that all the amended complaint alleges is that BMW declined to pursue an investment opportunity that required its money to be deposited with Mr. Teplin and then exercised a contractual right to have it returned. And I think counsel has conceded both of those statements to be true. But doesn't the amended complaint also say that Teplin provided BMW with assurances that the repayment would be forthcoming based upon an upcoming closing with Mr. Cohen, from which Teplin and Roth undertook to steal or embezzle? It's kind of ambiguous about what BMW's knowledge was. And given the involvement of all lawyers here and independent duties to report potentially the misuse of escrow money, why shouldn't they have a chance to pursue some discovery about really what was known at the time, given BMW was making these threats that there had been a violation of their escrow promises by a lawyer? Had they reported earlier, you know, maybe the equities would look different and that Mr. Cohen, the transaction wouldn't have taken place. Isn't that enough for them to get a little farther than they got? Well, I think I would respond in two ways. First, as Your Honor noted and as Judge Coates noted in the reconsideration, the denial of Cohen's reconsideration decision, and again, the argument that's focused on that allegation, which is in the jurisdictional section of the complaint, because that was an issue on the underlying motion as well, it wasn't raised until reconsideration. I think it's an after-the-fact attempt to plug the gaps. But that notwithstanding, Judge Coates also noted that that was not entirely clear. I think it's quite unclear. It's what I might describe as a word salad. I'm not entirely sure what it means. But Judge Coates looked at that sentence and her reaction, and this is in the denial of reconsideration motion, is that even if one were to accord the construction that Cohen argued should be accorded, it wouldn't be enough to require BMW to hand over money that was indisputably owed to BMW. BMW didn't profit here. But if BMW had known that it had been stolen from the bank down the street, even though they were owed the money, wouldn't they arguably then have the duty to relinquish the money? I'm not sure that that's the case. If you look at the communications that counsel referred to, the e-mails that were backfired. So you don't think if they knew that the guy had just stolen, held up the bank and showed up, that they would have a duty to relinquish that money? They put a sack of money with a dollar sign on it, like in the cartoons, and say the property of Chase Manhattan Bank, and hands it over to BMW and says, here, I'm repaying what I stole from your escrow. Can they take it? I think that under that hypothetical, any lawyer worth his salt would make a phone call. That's not what's alleged to have happened here, even if you provide paragraph 52 with a generous construction. If you look at the communications that are appended to the complaint, it's a series of e-mails. None of them reference Mr. Cohen. None of them reference any funds that were being held by Mr. Teplin on behalf of anybody else. BMW is trying to get its money back, and Teplin says, we will repay you your money. That's what those communications show. So none of them can be construed to put BMW on notice. You have this information and belief allegation that doesn't make sense. Did counsel for BMW have any obligation to report the mistreatment or misuse of an escrow, failure to abide by the terms of an escrow by another counsel? I haven't analyzed whether they have an obligation under New York ethical laws. BMW's counsel on this transaction, they were Texas lawyers. I know that they referred to reporting Mr. Teplin in the e-mail. But, you know, this was an issue that was raised after Judge Coate had decided the motion to dismiss. It's not something we've really delved into. And I don't think it really matters here when you have, you know, an entity that received not a penny more than what it put in in the first place and had a contractual right to receive that money. The question is whether they were unjustly enriched by being paid back the money that they had put into escrow that Mr. Teplin had taken from them. In a situation where there is nothing but a conclusory allegation, at any rate, that they had any knowledge that the money they were paid with came from some illicit source. I think that's right. And I'll make one other point before I move on. Mr. Cohen filed a lawsuit against Mr. Teplin in early 2012 in New York State Court. I believe that lawsuit was stayed after Teplin filed for bankruptcy and Mr. Cohen actually obtained a multimillion dollar judgment against Mr. Teplin. But in that complaint, which was verified, Mr. Cohen actually alleges a number of facts about Mr. Teplin's questionable behavior. Mr. Cohen and Mr. Teplin apparently have known each other for many, many, many years. And so I would just submit as a final point in response to this whole line of argument, you know, if anyone would have known about Mr. Teplin's questionable bona fides, it would have been Mr. Cohen. And we had a couple of cases that we cited to in our appeal brief that a party's own failure to exercise caution will effectively bar an unjust enrichment claim like this, and neither of those cases were acknowledged or addressed in the reply. So on equity and good conscience, nothing in the appeal brief, in my view, should disturb Judge Coates' decision, which was well-reasoned, supportable under the facts of this case, and that decision should be affirmed and it would dispose of both claims. Thank you, counsel. Are you yielding back? I'm happy to discuss the other two issues if the court would like me to, but I'm also happy to yield back my time and rest on the papers. So if there are any questions, I'm happy to take them. I have no questions. No? Okay. I can turn it back over. Thank you. Very briefly, Your Honor, I think it's important to keep in mind, as I'm sure you realize, that this is a motion to dismiss, and we haven't had a chance to have any discovery at all. And the discovery is What would discovery yield that would save your case? What if Mr. Teplin said, I'm giving you back this money, but I just stole it from Richard Cohen? Do you expect to find an email like that in the record? I expect to find that Mr. Teplin promised them that he was going to get money from another source. Okay? In this case, Mr. Cohen. Okay? It never says Mr. Cohen, right? He just says another source. I don't know. I would have to explore that. There were a number of telephone conferences between BMW and Do you think you might find in the record Mr. Teplin explaining to BMW that this is money that he has recently stolen from Richard Cohen? I don't think Mr. Teplin was that simplistic. I was going to say that, but I was being But, frankly, you'd be shocked if you read my deposition of Mr. Teplin and what he admitted to, which contributed to his being sentenced. However, I think what they would have found, which is what Mr. Newton, BMW's attorney, strongly suspected, as is indicated in his email, that the money had deported Mr. Teplin's escrow. And the failure to report then becomes of an attorney knowing of What do you have to say? Would that wrongful act, if it is one, that unethical act or omission by the attorney, be attributable to the client who is getting his money back? What did the client do wrong? The client is not under any obligation to report misconduct by Teplin, is he? Well, I think it goes to two points. I think it goes, first of all, an attorney acts as an agent for his client. But this is an obligation that is personal to the attorney. It's not that the attorney is doing something wrongful at the behest of his client or on behalf of his client. He's just veiling in his own obligations as an attorney. Well, this becomes a matter of discovery. Because suppose, for instance, and this is speculation because I have to take Mr. Newton's deposition. But suppose Mr. Newton said to his client, you know what, I have an obligation to report Mr. Teplin. And the client said, no, I don't want you to do that. We would be in a situation where the client knew that it was instructing his client, his lawyer, to act in a way that is contrary to law. And we don't get there because this is a motion to dismiss and there's no discovery. How long had Mr. Cohen and Mr. Teplin known each other? Thirty years. I mean, frankly, Mr. Cohen, Mr. Teplin was Mr. Cohen's best friend. And it was, therefore, inconceivable that the money would be taken from him by his best friend. It's a long history. But that's not. Your adversary has alluded to some prior disputes over money that even predated the current one. Not disputes. Actually, he's alluded to the fact that Mr. Cohen was aware that Mr. Teplin had asked him for assistance because he was in trouble. Now, to get into that, we get into, again, this would be more appropriate, respectfully, in a summary judgment. If this was an appeal of a summary judgment motion, once we have discovery. We're no longer in the land of Gibson against Connolly for some ten years now where you have to make plausible factual allegations to suggest that something wrongful happened here that supports the cause of action. You can't just say, on information and belief, we think they're crooks. The plausible factual allegation is quite simply that they knew their money was not being returned. They had reason to suspect, strongly suspect, that it had been purloined and that the money was coming from someplace else. What you are hanging your hat on, then, is not that they had any reason on earth to think, that you have any plausible basis for alleging that they had any reason on earth to think that Teplin was stealing the money that he was repaying them. It just goes to what you're saying, really, is you stated a cause of action because the fact that they had reason to believe that Teplin had violated his obligations to them, that the attorney was required to report under his ethical obligations. That means they weren't entitled to take the money that he gave to them, even if they thought it was coming from his own legitimate resources. That's your argument, right? With a slight modification. I very much like your analogy with a cartoon character coming with a bag of money. But he doesn't come with – but why there, in that analogy, it says property of Chase Manhattan Bank. Nothing says property of Cohen or property of anyone but Teplin on the money that he returns to another. The only way I can establish that would be depositions, in which case I think I can establish, if given the chance, that they knew it was coming from a real estate transaction involving a third party and that, therefore, the money – and whether it was – What makes you think or what is alleged in the complaint that gives any reason why we should imagine that that's what's going to be learnable? I think there's – if I may, I think it's paragraph – just give me a second. We say in paragraph 51, upon information and belief – upon information and belief, Teplin had failed to return such funds, having already withdrawn and utilized the $300,000. Upon information and belief, paragraph 52, Teplin provided defendant with assurances that the repayment of such funds would be forthcoming based upon the pending and upcoming closing with Cohen, from whom Teplin and Roth undertook to steal and or embezzle in excess of $2 million without Cohen's knowledge or consent. Can you say anywhere what the information is as opposed to the belief that leads you to think that Teplin told BMW that the repayment would come from the closing with Cohen, from whom Teplin undertook to steal $300,000? I think – What makes that even – I mean, maybe if they're all crooks together, BMW and Teplin. But what would make anyone think it's plausible that Teplin says, don't worry, you're getting your money back because I'm going to steal it from Cohen tomorrow? I don't say upon information and belief that he was going to steal it. I say – Excuse me. I say – Excuse me. You just read to me. Upon information and belief, Teplin provided the defendant, BMW, with assurances that the repayment would be forthcoming based on the pending closing with Cohen, from whom Teplin and Roth undertook to steal $2 million. Right. So if I parse through that allegation, which perhaps should have been broken up into two sentences, okay, the portion that I'm focusing on is that the assurance is that the repayment of such funds would be forthcoming based upon a pending and upcoming closing with Cohen. So – Do you know for a fact that this is what they were told? I believe so. And I need a deposition to nail that down. I mean, because it's not in the email correspondence. But I know from Cohen's – from Teplin's behavior that he was in other situations because we have about six cases that we filed on behalf of Mr. Cohen. And I know from other instances he was promising people that I'm going to pay you back on getting money from a closing involving Mr. Cohen. So I have – that's a credible theory. And I need discovery to unearth that. Your time has long expired. Thank you very much. We have your argument. Thank you both. We'll reserve decision.